IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WYETH, | : |
| | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : No. 08-0754 |
| | : |
| DR. BERNARD M.J. WOLFE, | : |
| | : |
| Defendant. | : |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                 **MAY 8, 2008**

Presently before the Court is the Motion of Dr. Bernard M.J. Wolfe ("Dr. Wolfe") to Dismiss or in the Alternative to Stay the Proceedings initiated by Wyeth in this Court. For the following reasons, the Motion will be denied.

**I.    FACTS**

Dr. Wolfe invented a low-dose progesterone therapy, a type of hormone replacement therapy often prescribed to menopausal and postmenopausal women. This progesterone therapy forms the basis of United States patent No. 4,826,831 ("the 831 patent"). The patent describes methods of treating menopausal and postmenopausal disorders using estrogen and progesterone. Between 1985 and 2000, Dr. Wolfe and Wyeth's predecessor, American Home Products Corporation, entered into a series of agreements regarding the 831 patent. On January 1, 1991, Wyeth and Wolfe entered into an Option Agreement to allow Wyeth to "evaluate and develop" the information found in the 831 patent. (Compl. ¶ 12.) On December 9, 1992, the parties then entered into two Licence Agreements. Under these agreements, Dr. Wolfe granted Wyeth the

right "to make, have made, use and sell products under the 831 patent" in exchange for royalties on the sale of the products. (Id.) The license agreements were amended on April 1, 2000.

Pursuant to these agreements, each party retained the right to conduct independent research regarding hormone replacement therapy, and each party retained ownership of any intellectual property stemming from that party's individual research. In the early 1990s, Wyeth scientists, headed by Dr. James Pickar, began working on the Health and Osteoporosis, Progestin and Estrogen ("H.O.P.E.") study. On March 15, 2001, Wyeth sought to patent Dr. Pickar's findings from the H.O.P.E. study, and filed Patent Application No. 09/808, 878 ("the 878 patent"). Dr. Wolfe was not named as an inventor on Wyeth's application for the 878 patent.

On September 27, 2007, Dr. Wolfe filed two separate Complaints against Wyeth in Canada. In a case filed in the Canadian Federal Court, Dr. Wolfe seeks a declaration that the Canadian Patent Application corresponding to the 878 patent application in the United States should be amended to list Dr. Wolfe as the sole inventor. In an action filed in the Ontario Superior Court of Justice, Wolfe alleges claims against Wyeth for breach of contract, breach of fiduciary duty and misappropriation. In response, Wyeth filed a Declaratory Relief action in U.S. District Court. Wyeth seeks a declaration that it did not misappropriate any confidential information provided to it by Dr. Wolfe and that Dr. Wolfe's claims are time-barred by Pennsylvania's statute of limitations. On March 24, 2008, Dr. Wolfe filed a Motion to Dismiss Wyeth's Complaint for Declaratory Relief, or alternatively, to stay the proceedings in this Court pending the disposition of two actions filed in Canada.

II.   DISCUSSION

Dr. Wolfe asserts three grounds upon which the Complaint should be dismissed;

insufficiency of process, lack of personal jurisdiction under Rule 12(b)(2), and improper venue. Alternatively, Dr. Wolfe asserts that the present action should be stayed pending determinations in the cases pending before the Canadian courts. The issue of insufficient process has been resolved by the parties, and the Court will therefore not address it here. The remaining issues are addressed below.

### A. Personal Jurisdiction

General jurisdiction exists where the defendant's contacts with the forum state are "continuous and substantial." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). In deciding whether to exercise personal jurisdiction over a defendant, a court first determines whether the defendant's contacts with a forum are significant enough to support general jurisdiction. Id. Where no general jurisdiction exists, the court then looks for specific jurisdiction. Specific jurisdiction arises from the defendant's individual contact with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). A forum may exercise personal jurisdiction over a defendant who "purposely direct[s]" his conduct toward the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

There is a two-part test for determining the existence of specific jurisdiction. First, the plaintiff must demonstrate that the defendant has "minimum contacts" with the forum such that "he should reasonably anticipate being haled to court there." Id. at 474. Secondly, once minimum contacts have been established, they must be considered together with other factors to determine whether the exercise of personal jurisdiction comports with "fair play and substantial justice." Id. at 476 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). The additional factors to be considered are "the burden on the defendant, the forum State's interest in

adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution to controversies, and the shared interest of the several States in furthering fundamental social polices." Burger King, 471 U.S. at 477.

The Court finds that Dr. Wolfe had sufficient contacts with this forum such that this Court can rightfully exercise specific jurisdiction over him. The Third Circuit has stated that "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Gen. Elec. Co. v. Deutz AG, No. 00-2387, 2001 WL 1338312, at *2 (3d Cir. Oct. 31, 2001). In this case, throughout the parties' relationship, Dr. Wolfe continually negotiated with Wyeth employees located in Pennsylvania. While Dr. Wolfe was conducting his independent study, he repeatedly communicated with Wyeth employees in Pennsylvania and negotiated terms of the agreements with Wyeth employees in Pennsylvania. While the parties seem to dispute the actual number of times Dr. Wolfe traveled to Pennsylvania, it is clear that Dr. Wolfe did make at least one trip to Pennsylvania to negotiate the terms of the parties' agreements. Furthermore, in this day and age, electronic communication has replaced the rule of physical presence, as far as jurisdictional questions are concerned. Id. at *3. Thus, while some negotiations may have taken place in Canada, a number of the terms were also negotiated in this district through Wyeth employees located in Pennsylvania. "Parties who reach out beyond [their] state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking." Id. (citing Burger King, 471 U.S. at 473). As such, the Court finds that Wyeth has met its burden in proving the requisite minimum contacts between Dr. Wolfe and

4

this Court.

Next, in considering whether exercising personal jurisdiction over Dr. Wolfe comports with notions of fair play and substantial justice, this Court finds that it does. Burger King, 471 U.S. at 476. Dr. Wolfe argues that litigating in another forum is more difficult for him than for Wyeth due to the fact that Wyeth is a large corporation and he is just an individual, but this does not change the fact that Dr. Wolfe continually contracted with Wyeth employees in Pennsylvania for the sale of his product both in Pennsylvania and all over the world. Furthermore, because the H.O.P.E. study was conducted in Pennsylvania, it is likely that most of the witnesses and evidence pertaining to Wyeth's Complaint are also located here. Under these circumstances, the Court finds that it is fair to exert personal jurisdiction over Dr. Wolfe.

### B.    Venue

Dr. Wolfe also argues that the Complaint should be dismissed for improper venue pursuant to 28 U.S.C. § 1391(a)(2). The statute provides that a "civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2) (West 2008). The burden of proving that venue is improper is on the defendant. TJF Assocs. v. Kenneth J. Rotman & Allianex, L.L.C., No. 05-705, 2005 U.S. Dist. LEXIS 11943, at *3 (E.D. Pa. June 17, 2005). Nevertheless, the statutory language favors the defendant by requiring that the events connecting the defendant with the venue be "substantial." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

The Court finds that a substantial part of the events giving rise to this claim took place in

Pennsylvania. As noted above, Dr. Wolfe negotiated with Wyeth employees in Pennsylvania when negotiating his own contracts with the company. The research behind the H.O.P.E. study took place entirely in Pennsylvania, and this information is the subject of the 878 patent, on which Dr. Wolfe asserts he should be named as inventor. The factual basis of Dr. Wolfe's claims for breach of contract and misappropriation involve events that occurred primarily in Pennsylvania, and as such, venue is proper in this Court.

    **C.**    **Motion to Stay**

Alternatively, Dr. Wolfe asks that this Court stay the present proceedings until a decision is rendered in the two cases pending in the Canadian courts. "A United States district court has broad power to stay proceedings. The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1215 (3d Cir. 1976). Thus, whether to stay a proceeding based on the pendency of a foreign claim lies in the sound discretion of the trial court. Id.

"Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied." I.J.A., Inc. v. Marine Holdings, Ltd., 524 F. Supp. 197, 199 (E.D. Pa. 1981). Here, the Canadian actions are not far enough along in the process to warrant a stay in this Court. In the case filed in the Ontario Superior Court of Justice, there is a pending Motion to Dismiss, which that Court will not rule on until June 25, 2008. Similarly, the case filed in the Federal Court of Canada is also in its beginning stages. While some evidence has been submitted on the matter, the case has not yet been scheduled for hearing. Thus, it is unlikely that either Canadian case will soon be resolved. Staying the proceedings in this Court would, therefore, only serve to

6

delay the progress of this action. As such, the Court finds that a stay in this Court is inappropriate at this time.

      An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WYETH, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 08-0754 |
| DR. BERNARD M.J. WOLFE, | : |
| Defendant. | : |

## ORDER

**AND NOW**, this 8th day of May 2008, upon consideration of the Motion to Dismiss or in the Alternative to Stay the Proceedings filed by Defendant Dr. Bernard M.J. Wolfe (Doc. No. 4), and the response and replies thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE